Nathaniel K. Charny (NC 5664)
Charny & Associates
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnyandassociates.com

Attorneys for Plaintiff Cathleen Graziadio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHLEEN GRAZIADIO, <br><br>                      Plaintiff, <br><br> v. <br><br> CULINARY INSTITUTE OF AMERICA, SHAYNAN GARRIOCH, in her individual capacity, and LOREEN GARDELLA, in her individual capacity, <br><br>                      Defendants. | FIRST AMENDED COMPLAINT <br><br> Civil Action No. 13-cv-1082 (ER)(GAY) |

Plaintiff Cathleen Graziadio, by and through her counsel Charny & Associates, brings this First Amended Complaint and in support thereof states as follows:

## NATURE OF THE ACTION

1.     This is an action for damages and other relief under (i) the Family and Medical Leave Act of 1993, 29 U.S.C § 2601 et seq. (herein the FMLA) based on Defendants' willful unlawful interference with Plaintiff's rights under the FMLA and Defendants' termination from employment of Plaintiff in retaliation for her exercise of rights under the FMLA and (ii) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. and Article 15 of the New York Executive Law based on Defendants' unlawful discrimination against Plaintiff because of the disabilities of Plaintiff's immediate family members and/or Defendants' perception that

1

members of Plaintiff's immediate family are disabled and/or the record of disability of Plaintiff's immediate family members.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. §§ 1331.  Plaintiff's claims are brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.  This Court has supplemental jurisdiction over the state claims raised by virtue of 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 as Defendants' unlawful employment practices were committed in the County of Dutchess, State of New York, within the Southern District of New York.

## PARTIES

4.      Plaintiff Cathleen Graziadio (herein Plaintiff) is a former employee of defendant Culinary Institute of America and resides in Dutchess County, New York.

5.      Defendant Culinary Institute of America (herein defendant CIA) is a non-profit educational institution with offices at 1946 Campus Drive, Hyde Park, New York 12538.

6.      Defendant CIA is engaged in the business of providing educational instruction and practical experience to tuition-paying students in the fields of cooking and the operation and management of food-related businesses.

7.      As part of the educational services and practical training offered by it, defendant CIA operates a number of student-run restaurants open to the general public.

8.      At all times relevant herein, defendant CIA has conducted business in the State of New York.

9.      Defendant CIA was at all times relevant herein an employer within the meaning of 29 U.S.C. § 2611(4)(A).

10.      Defendant Shaynan Garrioch (herein defendant Garrioch) is Director of Human Resources for defendant CIA and, upon information and belief, resides in Dutchess County, New York.

11.      Upon information and belief, at all times relevant herein, defendant Garrioch had substantial control over the terms and conditions of Plaintiff's employment, including (i) having the power to hire and fire; (ii) having control over employee work schedules, including the discretion to grant or deny employee leave; (iii) having the ability to determine the rate and method of employee payment; and (iv) maintaining employment records of the employing entity.

12.      At all times relevant herein, defendant Garrioch acted directly or indirectly in the interest of defendant CIA.

13.      Defendant Garrioch participated directly in the decision to terminate Plaintiff's employment because of Plaintiff's exercise of rights under the FMLA and because of the disabilities of Plaintiff's immediate family members, the record of such disabilities and/or because she perceived Plaintiff's immediate family members to be disabled.

14.      Defendant Loreen Gardella (herein defendant Gardella) is manager of the payroll department of defendant CIA and, upon information and belief, resides in Dutchess County, New York.

15.      At all times relevant herein, defendant Gardella had substantial control over the terms and conditions of Plaintiff's employment, including (i) having the power to hire and fire; (ii) having control over employee work schedules, including the discretion to grant or deny employee leave; (iii) having the ability to determine the rate and method of employee payment;

3

and (iv) maintaining employment records of the employing entity.

16.     At all times relevant herein, defendant Gardella acted directly or indirectly in the interest of defendant CIA.

17.     Defendant Gardella directly participated directly in the decision to terminate Plaintiff's employment because of Plaintiff's exercise of rights under the FMLA and because of the disabilities of Plaintiff's immediate family members, the record of such disabilities and/or because she perceived Plaintiff's immediate family members to be disabled.

BACKGROUND

18.     In or about October 2006, Plaintiff began full-time employment with defendant CIA in Hyde Park, New York as a Payroll Administrator.

19.     As a Payroll Administrator, Plaintiff's duties and responsibilities included processing student payroll, complying with payroll reporting requirements and administering workers compensation matters.

20.     Until Defendants' unlawful interference, discrimination and retaliation and interference that is the subject of this action, Plaintiff was at no time subject to discipline or other adverse personnel action.

21.     By all accounts, Plaintiff's performance of her duties for defendant CIA was exemplary and exceeded the expectations of Defendants.

THE DISABILITIES OF PLAINTIFF'S IMMEDIATE
FAMILY MEMBERS AND PLAINTIFF'S FMLA LEAVE

22.     On June 6, 2012, Plaintiff's seventeen (17) year old son Vincent Graziadio (herein "Vincent") became ill and was rushed to the hospital as a result of symptoms resulting from previously undiagnosed Type I diabetes.

4

23.     Diabetes is a physiological condition affecting the body's digestive and endocrine systems, among others.

24.     Vincent's diabetes caused (and causes) side effects and complications that impaired (and impair) a number of major life functions, including his ability to see, to safely eat and take meals.

25.     Pursuant to the advice of her son's physicians, Plaintiff remained home and out of work to care for Vincent until June 18, 2012.

26.     Prior to taking such leave, Plaintiff advised defendant Gardella of Vincent's diagnosis and informed her that she would be required to remain home until June 18, 2012 in order to care for him.

27.     During the time that Plaintiff was away from work and home with Vincent, Plaintiff remained in contact with defendant Gardella and colleagues and was available by email to assist with any work-related issues that required Plaintiff's input.

28.     While on leave to care for Vincent, Plaintiff requested that defendant CIA provide her with paperwork for FMLA leave.

29.     On June 7, 2012, defendant CIA provided Plaintiff with an FMLA designation notice, indicating that she was approved for FMLA leave and that Plaintiff was not required to provide any additional documentation in connection with such leave.

30.     At no point during Plaintiff's absence did Defendants ask Plaintiff to provide any additional note or documentation concerning her need for leave during this time.

31.     Plaintiff returned to work on June 18, 2012.

32.     Upon returning to work, Plaintiff advised defendant Gardella that she would need to assist Vincent around meal times for the immediate future as he learned to care for his

5

diabetes and requested that she be permitted to arrive slightly late and depart slightly early in order to do so.

33.     Plaintiff received permission from defendant CIA to modify her schedule.

34.     At no time did Plaintiff's employer request that she provide any documentation other than what she had provided to substantiate the need to modify her schedule.

35.     On June 27, 2012, Plaintiff's twelve (12) year old son, TJ Graziadio (herein "TJ"), fractured his leg playing basketball and was required to undergo surgery in connection with such injury.

36.     TJ's injury, a compound leg fracture, was a physiological condition affecting the musculoskeletal system of his body and caused side effects or complications that impaired a number of major life functions, including TJ's ability to stand, walk, sit and care for his personal needs.

37.     By email on June 27, 2012, Plaintiff informed defendant Gardella of TJ's disability and advised that as a result she would be out from work the remainder of the week.

38.     Plaintiff further advised defendant Gardella that she would update her by email at the end of the week with information regarding her work status and asked what documentation she would need to provide in connection with anticipated future absences to care for TJ.

39.     Plaintiff received no response to her June 27, 2012 email.

40.     By email on June 29, 2012, Plaintiff updated defendant Gardella on the status of TJ's condition and stated that she would contact her in approximately one (1) week regarding her return to work.

41.     By email on July 2, 2012, Plaintiff advised defendant Gardella that she would be out the remainder of the week in order to care for TJ and would contact her on July 6, 2012 regarding her return to work.

42.     On July 5, 2012, defendant Gardella informed Plaintiff that, as of July 6, 2012, she would have 196.75 hours of FMLA time remaining and available and that Plaintiff's request for FMLA leave had been processed.  Defendant Gardella did not ask for Plaintiff for any further documentation or submissions in connection with her FMLA leave.

43.     Following July 5, 2012 and continuing until her summary discharge from employment, Plaintiff repeatedly requested that Defendants provide her with an accounting of her remaining FMLA leave, including the date on which such leave would be expended.

44.     Plaintiff made these requests to both defendants Gardella and Garrioch, as well as to Mary Maffia, defendant CIA's Payroll Administrator in Charge of FMLA Leave, but never received a response of any sort.

45.     Upon information and belief, the 196.75 hours of FMLA time remaining to Plaintiff as of July 6, 2012 would have afforded her leave until August 13, 2012.

46.     By email to defendant Gardella on July 9, 2012, Plaintiff requested that she be permitted to return to work on July 12, 2012 on a part time basis and asked what, if any, documentation she would need to provide in connection with her absences resulting from TJ's disability.

47.     To date, defendant Gardella has not responded to Plaintiff's inquiry.

48.     On July 11, 2012, Plaintiff attempted to contact defendant Gardella by phone and email to discuss Plaintiff's return to work but received no response.

49.     On July 17, 2012, Plaintiff received a letter from defendant Garrioch (sent by email attachment as well as registered mail to Plaintiff's home address), in which defendant Garrioch requested additional documentation concerning Plaintiff's absences and threatened that "[i]f you do not provide the necessary paperwork within [seven days], your absences will be considered unauthorized, and may result in further employment action."

50.     Upon receipt on July 17, 2012, Plaintiff immediately responded in detail, asking what additional documentation she would need to supply, and again inquiring about returning to work.

51.     By email to defendant Garrioch on July 18, 2012, Plaintiff provided a supplemental response to defendant Garrioch's July 17, 2012 correspondence that included additional information about the nature of Vincent's disability.

52.     These two (2) emails Plaintiff sent to defendant Garrioch (on July 17, 2012 and July 18, 2012) not only provided substantive responses to defendant Garrioch's email of July 17, 2012, but also explicitly iterated Plaintiff's intention to return to work immediately as well as her intention to provide whatever documentation Defendants requested.

53.     Plaintiff received no response from Defendants to either of these emails.

54.     On July 19, 2012, Plaintiff again contacted defendant CIA regarding outstanding documentation and her return to work.

55.     By email on July 20, 2012, defendant Garrioch threatened that Plaintiff would be terminated from employment because she failed to provide "evidence or certifications that must be required."

56.     In her July 20, 2012 email to Plaintiff, defendant Garrioch also cited to portions of an attached Department of Labor "brochure" regarding FMLA in support of her threats, stating,

8

for example that "planned medical treatment must be scheduled at a time that minimizes the disruption to your employer (see page 6), and must be with thirty days notice wherever scheduled in advance (see page 7)."

57.     Defendant Garrioch's July 20, 2012 email to Plaintiff threatens that, unless she provided "satisfactory evidence for [her] ongoing and continuing absences from work" that Plaintiff would be terminated from employment with defendant CIA.

58.     Defendant Garrioch's July 20, 2012 correspondence was the very first time that Defendnts articulated any deficiencies in the paperwork that was provided regarding Plaintiff's absences related to her sons' disabilities.

59.     In raising such concerns, defendant Garrioch offered no specifics as to what was missing or deficient and instead merely cited to pages within the attached Department of Labor brochure pertaining to the circumstances under which FMLA leave is appropriate or not appropriate.

60.     Plaintiff immediately responded to Garrioch requesting clarification as to the alleged missing and/or deficient documentation, but received no response.

61.     On July 20, 2012, in a continued attempt to identify and provide any missing FMLA documentation, Plaintiff asked her sons' physicians to contact defendant CIA.

62.      Soon thereafter, a nurse from the office of Vincent's physician spoke with defendant Garrioch, who was terse and failed and refused to provide any information on what supplemental information was needed.

63.     Nevertheless, the nurse completed and provided Plaintiff with another FMLA medical certification form with respect to Vincent.

64.    A nurse from the office of TJ's physician provided a doctor's note, including a diagnosis, in support of Plaintiff's need for intermittent leave as to TJ.

65.    Plaintiff requested the note concerning TJ because defendant CIA had still not told her what, if any, documentation it needed in support of Plaintiff's absences to care for him.

66.    By email on July 23, 2012, Plaintiff sent both the certification and physician's note to defendant Garrioch, repeated her request for an accounting of her FMLA leave and reiterated her concern that defendants had not provided specific information or engaged with Plaintiff in detail regarding her FMLA leave and return to work.

67.    By email on July 23, 2012, defendant Garrioch advised Plaintiff that defendant CIA would not allow her to return to work because defendant Garrioch does "not have any paperwork which justifies you returning to work . . . [and] continue[s] to not have what the CIA requires to justify your absences from the workplace."

68.    Defendant Garrioch's July 23, 2012 email concludes:  "[W]e will no longer be able to discuss this matter over email, as a face to face meeting is more appropriate to resolve these issues.  In the meantime, your continuing full time absence from work is considered unauthorized and unexcused."

69.    By email on July 23, 2012, Plaintiff immediately responded and restated:  (i) her intention and availability to return to work; (ii) her intention to provide all necessary documentation; (iii) the fact that she still did not understand what documentation was missing; and (iv) her request for an accounting of her FMLA leave time used and remaining.

70.    By email the same day, defendant Garrioch responded to Plaintiff in full:

> As per my last email, we will no longer be discussing these matters over email.  Please provide me with the dates/times you are available this week to meet so that we can review your documentation.  I cannot allow you to return to work until you

have presented sufficient documentation to justify your absences as
being medically necessary under FMLA law.

71.    By email on July 24, 2012, Plaintiff responded to defendant Garrioch, enclosing

additional medical documentation regarding Vincent (including a second medical certification

provided by his physician) and restating: "I feel [] there can be no mistake that I have tried to

comply with all of your requests, even with how ambiguous they have been. (I have mostly tried

to guess what you are looking for since I cannot get any guidance on what you want nor have I

received any forms to date to have filled out [] after numerous requests by me.)"

72.    By email the same day, Plaintiff advised defendant Garrioch: "I am available

whenever you are to meet the sooner the better as far as I am concerned so I can get back to work

therefore if you are available tomorrow please let me know and I will come in."

73.    Plaintiff received no response from Defendants for the following six (6) days, at

which time on July 30, 2012, she emailed defendant Garrioch asking for an update, stating in

full:

> I have yet to hear back from you to schedule the meeting you
> requested to have prior to allowing me to return to work. I emailed
> you right back a week ago and stated that I am available at any
> time to meet with you. There has been no response to date and it
> has been almost a week. I must say at this point I am extremely
> confused and upset about all that has happened in the last month.
> Your last email to me stated that I cannot come back to work, what
> is the implication of that. I feel sadly compelled to ask what is the
> status of my employment with the Culinary? Because at this point
> it seems to me that is a question that anyone in my situation would
> wonder about?

74.    By email approximately seven (7) hours later, defendant Garrioch responded to

Plaintiff, stating in full: "I asked you several times last week to provide me with possible dates

and times for a meeting. I did not receive any suggestions. Would you please make at least

three suggestions for dates and times so that I can tell you what works in between my previously scheduled meetings."

75.     By email on July 31, 2012, Plaintiff advised defendant Garrioch that she had previously offered her availability at defendant Garrioch's convenience and expressed her concern that perhaps defendant Garrioch had not received that email.

76.     By email on August 1, 2012, Plaintiff iterated to defendant Garrioch that she was available to return to work (full time) and again asking for an accounting of her FLMA time.

77.     By email that afternoon, defendant Garrioch responded, stating in full: "We need to meet before you can return to work as your absences to date have not been authorized. Would you please send me at least three dates and times that you are available to come in for a meeting."

78.     By email on August 2, 2012, Plaintiff responded, stating: "As I stated last week to you I am available at any time or day to meet with you to which I received no reply until I emailed you again. Again, I am available to meet with you whenever you can. Just send me a day and time . . ."

79.     In her August 2, 2012 email to defendant Garrioch, Plaintiff also repeated her request for clarification on what documentation was missing as well as her request for an accounting of her FMLA time to date.

80.     In the days following her August 2, 2012 email, Plaintiff continued to contact defendant CIA to attempt to resolve her FMLA leave and arrange for her return to work, but her communications went unanswered.

81.     On August 7, 2012, Plaintiff retained an attorney who contacted the CIA in an attempt to arrange for her return to work.

82.    By email on August 30, 2012, defendant CIA, through counsel, responded to Plaintiff's attorney and invited a dialogue regarding: (i) the missing documentation necessary for Plaintiff's return to work; and (ii) the possibility of a severance package should Plaintiff choose not to return to work.

83.    The email from defendant CIA's attorney provided no specifics regarding missing documentation and instead states in conclusory fashion that the documentation previously provided "was insufficient and incomplete."

84.    The email from defendant CIA's attorney also threatened that, absent satisfaction of the CIA's unstated requirements by the following Monday (one business day away), "the CIA will not be in position to presently approve her future need to take intermittent FMLA leave to care for her son."

85.    Upon information and belief, Plaintiff's attorney and defendant CIA's attorney had several communications in the following days, primarily focused on defendant CIA's interest in terminating Plaintiff with a severance package in exchange for a release of all claims, an option Plaintiff rejected.

PLAINTIFF'S TERMINATION FROM EMPLOYMENT

86.    By letter dated September 11, 2012 and sent via registered mail, Plaintiff was abruptly terminated from employment with defendant CIA.

87.    The termination letter states: "[b]ased on the fact that you have not contacted your supervisor to arrange to return to work as of the date of this letter, it is obvious to us that you do not want to return to work . . . Accordingly, under these circumstances, we are processing an administrative termination of your employment effective as of the date of this letter."

88.    The letter was signed by defendant Garrioch.

EEOC AUTHORIZATION TO FILE

89.     On or about January 26, 2013, Plaintiff filed a charge of disability discrimination

against defendant CIA with the Equal Employment Opportunity Commission (EEOC) and

requested the immediate issuance of a Notice of Right to Sue.

90.     The EEOC issued Plaintiff a Notice of Right to Sue, dated March 28, 2013.

91.     Plaintiff brings this First Amended Complaint within ninety (90) days of the

receipt of a Notice of Right to Sue.

## AS AND FOR A FIRST CAUSE OF ACTION
(Family and Medical Leave Act - Interference)

92.     Plaintiff repeats and reiterates each and every allegation in the preceding

paragraphs as if set forth fully herein.

93.     By refusing to allow Plaintiff to return from FMLA leave and denying her

reinstatement at the conclusion of such leave, Defendants interfered with Plaintiff's rights under

the FMLA.

94.     By engaging in such interference, Defendants violated the Family and Medical

Leave Act of 1993, 29 U.S.C. 2601 et seq.

95.     As a proximate result of defendants' interference with Plaintiff's rights under the

FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past

earnings, the loss of future earnings, and the loss of other employment benefits in an amount to

be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
(Family and Medical Leave Act - Retaliation)

96.     Plaintiff repeats and reiterates each and every allegation in the preceding

paragraphs as if set forth fully herein.

14

97.     Plaintiff's termination from employment by Defendants less than one (1) month after the conclusion of her FMLA leave was willfully undertaken in retaliation for Plaintiff exercising her rights under the FMLA.

98.     By engaging in such retaliation, Defendants violated the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 et seq.

99.     As a proximate result of Defendants' retaliatory actions on the basis of her exercise of rights under the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proven at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
(Americans with Disabilities Act - Discrimination)

100.    Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

101.    By undertaking the foregoing, defendant CIA discriminated against Plaintiff by terminating her employment because of the disabilities of her immediate family members, the record of such disabilities and/or Defendant's perception that Plaintiff's immediate family members are disabled.

102.    In so acting, defendant CIA violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.

103.    By undertaking the foregoing, defendant CIA has acted with malice or reckless indifference to Plaintiff's federally protected rights

104.    As a proximate result of defendant CIA's discrimination against Plaintiff on the basis of the disabilities of her immediate family members, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss

of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
(New York Human Rights Law - Discrimination)

105.    Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

106.    By undertaking the foregoing, defendant CIA discriminated against Plaintiff by terminating her employment because of the disabilities of her immediate family members, the record of such disabilities and/or Defendant's perception that Plaintiff's immediate family members are disabled.

107.    Defendants Garrioch and Gardella aided and abetted such discrimination by defendant CIA.

108.    In so acting, Defendants violated New York Executive Law §§ 292 and 296 <u>et seq.</u>

109.    As a proximate result of Defendants' discrimination against Plaintiff on the basis of the disabilities of her immediate family members, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

### JURY TRIAL DEMAND

110.    Plaintiff requests a jury trial in this matter.

16

WHEREFORE, Plaintiff requests judgment:

i.       Granting her compensatory damages in an amount to be determined at trial for lost wages and benefits, including an award of front pay;

ii.      Granting her compensatory damages in an amount to be determined at trial for the emotional distress suffered as a direct result of Defendants' discriminatory actions;

iii.     Granting her punitive damages under the Americans with Disabilities Act of 1990 against defendant CIA for its intentional and bad faith violations of the Americans with Disabilities Act of 1990

iv.      Granting her an unreduced amount pursuant to 29 U.S.C. 2617 (a)(1)(A)(iii) for Defendants' willful violation of the FMLA;

v.       Granting her costs, pre and post judgment interest, and reasonable attorney's fees; and

vi.      Granting her such other and further relief as seems just and proper to the Court.

Dated: Rhinebeck, New York
        April 16, 2013

Nathaniel K. Charny (NC 5664)
Charny & Associates
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnyandassociates.com

Attorneys for Plaintiff Cathleen Graziadio